UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

GEMEX SYSTEMS INC.,
UGTS INC.,

      Plaintiffs,

      v.                                                               Case No. 11-C-0148

ANDRUS SCEALES STARKE & SAWALL LLP,
COOK & FRANKE SC, JEFFREY S. SOKOL,
WESTCHESTER FIRE INSURANCE COMPANY,
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

      Defendants.

---

DECISION AND ORDER DENYING DEFENDANTS' MOTIONS
TO DISMISS (DOCS. 15, 17, 19) AND SETTING A SCHEDULING CONFERENCE

On January 7, 2011, GemEx Systems, Inc. ("GemEx") and UGTS, Inc. ("UGTS") commenced an action against defendants alleging negligence and breach of contract.[1] Plaintiffs charge that their former patent counsel negligently failed to pay the second maintenance fee for U.S. Patent No. 5,615,005 ("the '005 Patent"), which resulted in the lapse of the patent. On March 11, 2011, defendants filed motions to dismiss maintaining that 1) plaintiffs' complaint fails to allege the causation and damages elements of legal malpractice; 2) plaintiffs' claims are not ripe; and 3) plaintiffs are judicially estopped from asserting that defendants were negligent in connection with the lapse of the '005 Patent.

STATEMENT OF FACTS

On March 25, 1997, the United States Patent and Trademark Office ("USPTO") issued the '005 Patent to UGTS, covering the design and application of imaging

---

[1] The plaintiffs assert: negligence and breach of contract claims against Andrus, Sceales, Starke & Sawall, LLP ("Andrus Sceales") and Cook & Franke, SC ("Cook & Franke"); a negligence claim against Jeffrey S. Sokol ("Sokol"); and direct actions against insurers Westchester Fire Insurance and St. Paul Fire & Marine Insurance Co.

spectrophotometry for the scanning of cut gemstones light performance and color. (Compl. ¶ 20.) Andrus Sceales prosecuted and procured the '005 Patent for UGTS. (Compl. ¶ 25.) Westchester Fire Insurance Company is an insurer of Andrus Sceales. (Compl. ¶ 6.) In 1998, GemEx signed an exclusive license with UGTS for all of its patents, technology, and copyrights, (Compl. ¶ 13), and thereafter Andrus Sceales represented plaintiffs in connection with patent and intellectual property matters. (Compl. ¶ 28.) Until November 2005, Sokol was the partner at Andrus Sceales handling the firm's representation of the plaintiffs. (Compl. ¶ 27.) Thereafter, Sokol became a shareholder of Cook & Franke, where he handled that firm's representation of the plaintiffs. (Compl. ¶ 27.) St. Paul Fire & Marine Insurance Company is an insurer of Cook & Franke. (Compl. ¶ 7.)

A March 17, 1997, letter from Andrus Sceales to UGTS advised that the '005 Patent would be subject to the requirements of maintenance fees payable during the third, seventh and eleventh years, and that the firm docketed the patent accordingly. (Compl. ¶ 29.) Andrus Sceales determined correctly the dates on which the maintenance fees would be due: September 25 of 2000, 2004 and 2008. (Compl. ¶ 30.)

By letter dated July 31, 2000, Andrus Sceales advised plaintiffs that the first maintenance fee for the '005 Patent would be due on or before September 25, 2000. (Compl. ¶ 31.) The firm asked plaintiffs to advance the legal fees for its services in making the maintenance fee payment, which included the amount of the maintenance fee. (Compl. ¶ 31.) Accordingly, Andrus Sceales made the maintenance fee payment in a timely fashion. (Compl. ¶ 31.)

Andrus Sceales did not arrange for or make the second maintenance fee payment by the September 25, 2004, due date. (Compl. ¶ 33.) On October 14, 2004, the USPTO

2

sent Andrus Sceales, as patent counsel of record, a maintenance fee reminder notice for the '005 Patent. (Compl. ¶ 33.) The notice stated that the late payment would be accepted within the six month grace period provided by statute, but that the patent would expire at the end of the grace period. (Compl. ¶ 33.) In a letter dated November 14, 2004, Sokol advised the plaintiffs that the second maintenance fee payment was "due on or before December 25, 2004." (Compl. ¶ 34.) The letter also requested that plaintiffs advise the firm whether they wanted to pay the fee, and if so, requested an advance payment of the legal fees of $1,265, including the second maintenance fee. (Compl. ¶ 35.)

Plaintiffs responded on December 3, 2004, by directing Andrus Sceales to pay the second maintenance fee, and submitting Check No. 5035 in the amount of $1,265. (Compl. ¶ 36.) Although Andrus Sceales cashed the check, it did not pay the second maintenance fee. (Compl. ¶ 36.) Sometime later, Andrus Sceales revised its accounting records, and moved the credit for the $1,265 payment on the '005 Patent to another GemEx account. (Compl. ¶ 36.) The policies and procedures of Andrus Sceales require an accounting change of this kind to be approved by the partner in charge of the accounts, Sokol. (Compl. ¶ 36.)

Andrus Sceales and Sokol failed to pay the second maintenance fee by March 25, 2005, the end of the six moth grace period. (Compl. ¶ 37.) As a result, the '005 Patent expired. (Compl. ¶ 37.) On April 27, 2005, the USPTO mailed a Notice of Expiration to Andrus Sceales, which was received by the firm on May 13, 2005. (Compl. ¶ 38.) It did not forward a notice to the plaintiffs. (Compl. ¶ 38.)

Sokol resigned from his position as a partner at Andrus Sceales and sought the permission of his clients to take their patent and intellectual property matters to Cook &

3

Franke. (Compl. ¶ 39.) On December 5, 2005, plaintiffs advised Andrus Sceales by letter that they would transfer all of their matters to Sokol at his new law firm, Cook & Franke, (Compl. ¶ 39), and requested Andrus Sceales to immediately make available all of their files. (Compl. ¶ 40.) Andrus Sceales sent to Sokol and Cook & Franke a letter on December 8, 2005, confirming the transfer of its files relating to Sokol's clients. (Compl. ¶ 41.) A checklist attached to Andrus Sceales' letter listed the files that were being transferred. (Compl. ¶ 41.) Although the '005 Patent was included on the checklist, it was not marked with a check. (Compl. ¶ 41.) Accordingly, the '005 Patent file was not included in the December 8 "pick-up" of hard copy files. (Compl. ¶ 41.)

Plaintiffs learned of the '005 Patent's expiration in November 2008 when GemEx's business attorney reviewed GemEx's intellectual property. (Compl. ¶ 46.) Plaintiffs promptly obtained the services of new patent counsel and filed a petition for the reinstatement of the '005 Patent on September 29, 2009. (Compl. ¶ 46.) The USPTO granted the petition for reinstatement on September 14, 2010. (Compl. ¶ 47.)

On January 7, 2011, plaintiffs commenced an action against defendants in the Milwaukee County Circuit Court and defendants filed a timely notice of removal. Plaintiffs' motion to remand to the state court was denied based on this court's finding that the issues raised in the complaint require the resolution of a substantial question of patent law.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999);

4

*see* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiffs have pleaded insufficient facts; rather, it is that even assuming all of the facts presented are accurate, they have no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). The court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

Federal notice pleading requires only that a plaintiff set out a "short and plain" statement of the claim providing a defendant with fair notice of his claim. *Scott,* 195 F.3d at 951. Fair notice does not require every element of a legal theory to be specifically set forth. *Id.* However, the factual allegations must be enough to rise above the speculative level, meaning that the contentions have to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "[A] district court should dismiss a complaint if 'the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007). Conclusions or vague language are acceptable so long as a defendant can understand the claim. *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002).

"The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson*, 300 F.3d at 753; Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Any further pleadings would turn the motion into a 12(c) motion for judgment on the pleadings, or if additional evidence

5

was relied upon or introduced, the motion would be converted into a motion for summary judgment. *Thompson*, 300 F.3d at 753. However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to his claim. *Id.* Such documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The court may consider public records without converting a 12(c) motion to one for summary judgment. *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008).

## ANALYSIS

Under Wisconsin law, a legal malpractice claim must allege: (1) the existence of an attorney-client relationship; (2) acts or omissions constituting negligence; (3) causation; and (4) damages or injury. *See Acharya v. Carroll*, 152 Wis. 2d 330, 339 (Wis. Ct. App. 1989). According to the defendants, the complaint in this case should be dismissed for failure to sufficiently allege causation and damages.

In pertinent part, the instant complaint states, "Until recently, GemEx had no competitors in the market for testing out cut diamonds using scientific spectrophotometry, because its controlling, patent-protected position prevented competitors from using its proprietary technology." (Compl. ¶ 20.) It adds that, "Andrus Sceales did not arrange for or make the second maintenance fee payment by the due date," (Compl. ¶ 20), "[a]nd it failed to pay the maintenance fee by March 25, 2005 - the end of the sixth month grace period . . . . [and] [a]s a result of its failure to do so, the '005 Patent expired," (Compl. ¶ 37.)

6

The complaint further states: "Cook & Franke never inquired why the '005 Patent file was not 'checked' on the December 8 checklist and why the hard copy of the key GemEx patent file was never transferred to Cook & Franke" and "had it discovered these at the time of the file transfer in 2005 or later in its ongoing representation, GemEx and UGTS would have had ample time to petition the USPTO to reinstate the '005 Patent within the two year window for 'unintentional abandonment.'" (Compl. ¶ 37.) It describes Sokol as the partner at Andrus Sceales who was in charge of the representation of the plaintiffs, who upon transfer to Cook & Franke was the shareholder in charge of that firm's representation of the plaintiffs. (Compl. ¶ 27.) As a result, the complaint sufficiently alleges causation of injury by all defendants.

Under 35 U.S.C. § 41(c)(1), a party whose patent has expired may seek reinstatement of the patent after the end of a six month grace period if the delay was unintentional or unavoidable. However, a reinstated patent may be subject to the rights of an intervener, who in reliance on the expiration of that patent, first began infringing activity after the six month grace period ended and before the USPTO accepted the delayed payment. *See* 35 U.S.C. § 41(c)(2).

Defendants submit that the complaint alleges only the possibility of future harm, specifically that competitors "may" someday succeed in establishing intervening rights to the '005 Patent, and that the plaintiffs' damages depend exclusively on whether any infringing competitors acquired intervening rights. This contention appears to ignore paragraph 47 of the complaint, which states:

> While no competitor to the GemEx System had attempted to enter the market before the premature expiration, businesses with knowledge of the lapse began to market competitive machines and services during the lapse

7

period. These competitors may have acquired intervening rights to practice the '005 Patent as a result of the untimely lapse. Indeed, during the lapse period, when charged with infringing the '005 Patent, one of GemEx's competitors responded by stating there could be no infringement because the '005 Patent had lapsed. The competitor never disputed that its product was covered by the '005 Patent.

(Compl. ¶ 47.)

According to paragraph 47, competing businesses that learned of the lapsed '005 Patent commenced selling machines and services to its previously exclusive market and one such competitor stated to Gemex that the lapsed '005 Patent could not be infringed. In Wisconsin, a legal malpractice action requires actual damages, which does not encompass "the mere possibility of future harm." *Hennekens v. Hoerl*, 160 Wis. 2d 144, 152-53 (Wis. 1991). As alleged in paragraph 47 and elsewhere, plaintiffs placed defendants on notice of the possibility of various forms of damages: including, but not limited to, lost profits, lost business, and price erosion. Defendants note that plaintiffs have never commenced an action for infringement or identified any of the alleged interveners. However, plaintiffs are not required to commence an action to prove that they were harmed by the negligence of defendants.

Defendants assert that the pending complaint does not state a claim for attorney's fees. However, the complaint states that once plaintiffs learned that the patent expired:

> [t]hey promptly obtained the services of new patent counsel and filed a petition for the reinstatement of the patent. The new patent counsel sought the cooperation of Sokol, Andrus Sceales, and Cook & Franke in connection with its effort to prepare the petition. Sokol and the two firms failed to timely cooperate with the new patent counsel . . ."

(Compl. ¶ 46.) The court concludes that paragraph 46 of the plaintiffs' complaint duly notified defendants that they had to hire new counsel whose services were not free.

8

Sokol's brief supporting his motion to dismiss, argues that "[plaintiffs'] claim that unknown competitors 'may' establish intervening rights as an affirmative defense to a claim for infringement is not ripe . . . ." Ripeness is a question of subject matter jurisdiction. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). And, pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), a litigant may seek dismissal of a claim for lack of subject matter jurisdiction. However, Sokol "moves the Court for an order dismissing the plaintiffs' complaint pursuant to FRCP 12(b)(6)." He does not move for dismissal under Rule 12(b)(1). Nevertheless, the court will evaluate Sokol's arguments upon their merits, construing the relevant parts of his motion as a request to dismiss for lack of subject matter jurisdiction.

A claim is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (quoting *Texas v. United States*, 523 U.S. 296,(1998)). Plaintiffs' claims for attorney's fees related to the reinstatement of the '005 Patent are based upon what they say are past events and as such are not speculative and ripe for adjudication. Similarly, plaintiffs' claims for damages resulting from rights acquired by interveners are ripe for judicial review.

To maintain a patent in force for its maximum term, maintenance fees must be paid 3 ½, 7 ½ and 11 ½ years after the grant of the patent, or within a grace period of 6 months thereafter. 35 U.S.C. § 41(b). Pursuant to 35 U.S.C. § 41(c)(1), the USPTO has the "authority to accept maintenance fee payments (and thus revive patents) that are over 30 months late if the delay is shown to the satisfaction of PTO to have been unavoidable." *R.R. Donnelley & Sons Co. v. Dickinson*, 123 F. Supp. 2d 456, 458 (N.D. Ill. 2000).

9

A patent owner seeking to reinstate an expired patent bears the burden of proving that the delay was "unintentional" or "unavoidable." *See Id.* at 459. To establish that the delay was "unavoidable," the patent owner must provide evidence that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent," and "enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which [the] patentee became aware of the expiration of the patent, and the steps taken to file the petition [for reinstatement] promptly." *See* 37 C.F.R. 1.378(b)(3); *Burandt v. Dudas*, 496 F. Supp. 2d 643, 649 (E.D. Va. 2007).

> The key question is . . . whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." In this context, the reasonably prudent person has been interpreted to mean that the patent owner must exercise the diligence generally used and observed by prudent and careful men in relation to their most important business. . . . The Federal Circuit has conclusively and unequivocally spoken about whose actions must be reviewed in determining whether a delay in paying maintenance fees is to be considered "unavoidable" pursuant to both 35 U.S.C. § 41(c) and 37 C.F.R. § 1.378(b)(3): In determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person.

*Id.* at 649 (internal citations omitted).

Under the doctrine of judicial estoppel, "[a] litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993). This doctrine has even been applied in cases where a party to an administrative proceeding

10

seeks to repudiate a determination in a subsequent judicial proceeding." *Id.* "Although the doctrine of judicial estoppel has no precise bounds, certain clear prerequisites exist for its application: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999).

Here, plaintiffs filed a petition for the reinstatement of the '005 Patent, (Compl. ¶ 46), and the USPTO granted their petition on September 14, 2010, (Compl. ¶ 47).[2] As a consequence, defendants submit that plaintiffs could not have obtained the reinstatement from the USPTO absent a showing that defendants acted with reasonable care. Hence, the defendants reason that the negligence claims at issue are inconsistent with the plaintiffs' earlier position before the USPTO and should be judicially estopped.

In response, plaintiffs provided the declarations they submitted to the USPTO in support of their petition for reinstatement of the '005 Patent suggesting that defendants failed to exercise reasonable care respecting the '005 Patent. For example, the petition states that "the Andrus firm cashed the check, and the Andrus firm did not contact GemEx again regarding the second maintenance fee, GemEx was unaware that the second maintenance fee was not paid." (Petition at 15.) It also states that "the Andrus firm received Notice of Expiration from the USPTO," and that "GemEx was not notified by the Andrus firm that the '005 patent expired." (Petition at 21-22.) An attachment to the petition notes that GemEx authorized the transfer of all of its matters to Sokol at Cook & Franke,

---

[2] The court takes judicial notice of plaintiffs' petition for the reinstatement of the '005 Patent.

11

but that Sokol never indicated that he did not receive the files for the '005 Patent. (Cassen Aff.; Decl. ¶ 8.) These statements in the reinstatement petition indicate that plaintiffs distinguished their conduct from the defendants' actions and that plaintiffs highlighted the detrimental conduct and inaction of their former attorneys. In no way did plaintiffs assert that their former counsel was not negligent.

The defendants have cited multiple cases wherein patent owners who had sought unsuccessfully to reinstate their expired patents asked courts to review the USPTO's application of the unavoidable delay standard. *See, e.g.*, *Ray v. Lehman*, 55 F.3d 606, 609 (Fed. Cir. 1995) (denying patentee's appeal for the USPTO's denial of his petition to reinstate a patent for failure to pay maintenance fee); *Hi/fn, Inc. v, Dudas*, 2009 WL 192590 (N.D. Cal. January 26, 2009) (reviewing the USPTO's dismissal of plaintiff's petition to accept delayed maintenance fees, finding that the errors of plaintiff's counsel did not constitute unavoidable delay); *Burandt v. Dudas*, 496 F. Supp. 2d 643, 649 (E.D. Va. 2007) (seeking judicial review of the USPTO's decision to deny the plaintiff's petition to reinstate his patent); *Douglas v. Manbeck*, 21 USPQ2d 1697, 1700 (E.D. Pa. 1991) (reviewing the USPTO's dismissal of plaintiff's petition to revive an abandoned patent application, finding that the errors of plaintiff and his counsel did not constitute unavoidable delay); *Rydeen v. Quigg*, 748 F. Supp. 900 (D.D.C. 1990) (reviewing the USPTO's dismissal of plaintiff's petition to accept delayed maintenance fees); *Smith v. Mossinghoff*, 671 F.2d 533 (D.C. Cir. 1982) (reviewing the USPTO's dismissal of plaintiff's petition to accept delayed maintenance fees); *In re Mattullath*, 38 App. D.C. 497, 514-15 (D.C. Cir. 1912) (reviewing the Commissioner's refusal to revive applicant's abandoned patent application because delay in prosecution was not unavoidable). However, the cited cases

12

did not specifically hold that plaintiffs were judicially estopped from pursuing their attorneys' legal malpractice. Hence, this court is not persuaded that plaintiffs' assertions of unavoidable delay before the USPTO should shield defendants from potential liability in this case for failure to exercise reasonable care. Accordingly,

IT IS ORDERED that defendants' motions to dismiss are denied.

IT IS FURTHER ORDERED that the parties appear for a scheduling conference on Thursday, May 17, 2012, at 10:00 a.m. in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 29th day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE