UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GEMEX SYSTEMS, INC. and <br> UGTS, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> ANDRUS, SCEALES, STARKE & SAWALL, LLP, COOK & FRANKE, S.C., JEFFREY S. SOKOL, WESTCHESTER FIRE INSURANCE COMPANY, and <br> ST. PAUL FIRE & MARINE INSURANCE COMPANY, <br><br> Defendants. | Case No.: 11-CV-00148 |

**DECLARATION OF GRADY J. FRENCHICK IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

I, Grady J. Frenchick, declare as follows:

**I.  My Background and Qualifications**

1.  I am an attorney at Whyte Hirschboeck Dudek S.C. in the Intellectual Property Practice Group, where I have practiced since 2005.

2.  I have been a practicing patent attorney for over 30 years. I am admitted to practice law in the states of Wisconsin and Minnesota. I am a member of the bars of the Court of Appeals for the Federal Circuit and of the United States Supreme Court. I was registered to practice before the United States Patent and Trademark Office in 1978 (registration number 29018). I have prosecuted hundreds of United States patents and thousands of patents world-wide since 1978. During my private practice career, I have transferred between law firms four different times. Each time I have changed firms, I have performed the process of transferring my clients' files from firm to firm (to the extent that I was instructed by my clients to do so).

3.  During my time as a patent attorney, I have worked in the legal departments of several companies prosecuting patents. First, I was a Patent Attorney with 3M Company, where I worked from 1977 - 1979. Then, I was a Staff Patent Attorney with Economics Laboratory, Inc., located in St. Paul, Minnesota from 1979 - 1983. Then I was a Senior Patent Counsel with Medtronic, Inc., located in Minneapolis, Minnesota from 1983 - 1991.

4.  I have also taught patent law. Since 1995, I have served as an adjunct professor of law at the University of Wisconsin School of Law, where I teach patent law and prosecution law. Previously, I served from 1988 - 1991 as an adjunct professor of law at the University of Minnesota School of Law, teaching patent, trademark and copyright law.

5.  From 2008 through 2012, I have been ranked in Chambers USA as one of America's Leading Lawyers for Business in Intellectual Property, and I have authored numerous articles on patent law and prosecution law.

6.  I received my Master of Science degree in Chemistry from the University of Wisconsin in 1978. I received my law degree from the University of Wisconsin in 1977. I received my Bachelor of Arts degree from Lawrence University in 1972.

7.  My current *curriculum vitae* is attached as Exhibit A to this Declaration.

## II. Scope of My Declaration

8.  I have been retained by GemEx Systems, Inc. ("GemEx") and UGTS, Inc. ("UGTS") to provide an expert opinion in this case. Specifically, I have been asked to provide my opinion on the professional standard that a reasonable and competent patent attorney is expected to meet in the context of preparing for and paying maintenance fees and transferring client files, and particularly in the circumstances of this case. I have further been asked to provide my opinion on whether Jeffrey Sokol, Andrus Sceales, and Cook & Franke met those

2

standards of care in the circumstances of this case. In connection with rendering the opinions set forth in this declaration, I have reviewed several sources, including the following:

    a.    U.S. Patent 5,615,005 (the "Patent");

    b.    The petition for reinstatement of the Patent that was filed with the USPTO, including all exhibits and declarations thereto;

    c.    The decision of the USPTO granting the above-referenced petition for reinstatement of the Patent;

    d.    Interviews with Randy Wagner and Glenn Cassens of GemEx;

    e.    The statutes and regulations relating to the payment of maintenance fees and the consequences of not doing so;

    f.    Various other documents and materials related to the Patent and this case, including, but not limited to, documents found in the attorney files for Plaintiffs from Andrus Sceales and Cook & Franke and from records of Plaintiffs.

9. My opinions cover the knowledge that a reasonable and competent patent attorney would have, and the actions that a reasonable and competent patent attorney would take, in matters of (1) docketing of his client's patents for payment of maintenance fees; (2) responding to significant correspondence from the USPTO about his client's patents, including, but not limited to, correspondence regarding patent maintenance fees; (3) complying with a client's instructions to transfer client files from one law firm to another law firm when the attorney changes firms; (4) complying with the attorney's fiduciary obligations to his client, including, but not limited to, his obligations to monitor and safeguard the client's patent rights over the full 26-year period from the filing of a patent application until the patent's ultimate expiration; and (5) complying with the client's instructions regarding payment of 4-year maintenance fees. I

3

reserve the right to revise or supplement this Declaration as appropriate based on new information that is brought to my attention as discovery and investigation continue in this case.

### III. The Importance of Patents

10. "[A] patent is an intellectual property right granted by the Government of the United States of America to an inventor to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States." (http://www.uspto.gov/patents/index.jsp.) According to a joint report recently issued (in March 2012) by the United States Chamber of Commerce, and prepared by the USPTO and the Economics and Statistics Administration,

> [p]atents, trademarks, and copyrights are the principal means used to establish ownership of inventions and creative ideas in their various forms, providing a legal foundation to generate tangible benefits from innovation for companies, workers, and consumers. Without this framework, the creators of intellectual property would tend to lose the economic fruits of their own work. . . . Moreover, without [intellectual property] protection, the inventor who had invested time and money in developing the new product or service (sunk costs) would always be at a disadvantage to the new firm that could just copy and market the product without having to recoup any sunk costs or pay the higher salaries required by those with the creative talents and skills.

(http://www.uspto.gov/news/publications/IP_Report_March_2012.pdf.) For these reasons, patents are extremely important to inventors and to society at large. They protect an inventor's right to profit from an invention, and they deter others from attempting to profit from the efforts of the inventor by making and using products or methods that are similar to the inventor's patented product or method. Patents encourage people to spend their efforts to innovate through invention of useful products and methods, by giving them protection against others taking and profiting from their original ideas. As Abraham Lincoln is alleged to have said, "[T]he patent system adds the fuel of interest to the fire of genius."

4

## IV. The Professional Standard of Care With Regard to Docketing of Patents for Payment of Maintenance Fees

There is a Legal Requirement to Pay Maintenance Fees on a Patent.

11. Under United States law, a patent holder must pay three separate patent maintenance fees to the USPTO to keep the patent in force. For practical purposes, maintenance fees are due four years, eight years, and twelve years after the issuance of the patent, respectively. The statute that requires maintenance fees to be paid, (35 U.S.C. §41(b), states that maintenance fees are due at 3 years and 6 months, 7 years and 6 months and 11 years and 6 months after grant of a patent. The same statute provides a six month "grace period" after each of those due dates which upon payment of a nominal surcharge means that the maintenance fee due dates for practical purposes are thought of as 4, 8 and 12 year fees. Failure to pay a maintenance fee on or before expiration of the 4, 8, and 12 time periods after patent issuance (plus any required surcharge, if needed) means that the patent "expires." As is discussed here patent maintenance fees may be paid up to a year in advance of their four, eight, and twelve year deadlines. The requirement to pay these fees is found in the above noted statute and 37 C.F.R. §1.362(a). A reasonable and competent patent attorney would be well informed about these requirements and how a maintenance fee is paid to the USPTO. Specifically, maintenance fees should be paid by the due dates, which occur every four years and are discussed above. If the maintenance fee is not paid by the due date, the patent expires. A reasonable and competent patent attorney would know that a patent will expire, and lose its legal effect, if a patent maintenance fee is not paid on time.

Patent Attorneys Will Routinely Offer to "Docket" Patent Maintenance Fees For Payment.

12. Because a reasonable and competent patent attorney knows that a patent will expire, and the client will lose the legal benefits of the patent, if a maintenance fee is not paid by

5

the due date, it is common for patent attorneys to offer to their clients a service to ensure that the fees are timely paid. Specifically, the attorney will offer to record the dates that the maintenance fees are due; remind the patent holder near the due date that a maintenance payment will soon be due; obtain necessary funds from the client to pay the maintenance fee; and pay the maintenance fee to the USPTO by the due date, as well as other related activities including, in my experience, informing the client that the task has been completed.. Patent attorneys use different names for these services. It is commonly referred to as "docketing" the maintenance fees for payment (it is also known as "journaling" or "docket maintenance").

13. The reason that a reasonable and competent patent attorney would "docket" maintenance fees for payment is, of course, to ensure that they are paid on time. Patent attorneys will often docket numerous patents for many different clients. They therefore will create and utilize specific docketing processes, often performed by law firm employees acting under the direction of the patent attorney, to manage maintenance fee payments and ensure that they are made on time. Docketing of maintenance fees is an important service to clients, both due to the high stakes involved (*i.e.*, the importance of keeping the client's patent in force), and because, in my experience, the vast majority of patent-holder clients are not trained in the law and rules governing maintenance fee payments and rely on their patent attorneys to know those rules and law to ensure compliance with them. It is essential that patent attorneys who undertake to perform docketing services meet their fiduciary duties to their clients by performing them competently, to ensure that the client's patents do not expire.

14. Patent attorneys must take and pass a special examination administered by the USPTO. Once the USPTO examination has been taken and passed by a lawyer they are admitted to practice before the bar of the USPTO, they are given a registration number (mine is noted

6

Case 2:11-cv-00148-CNC   Filed 12/27/12   Page 6 of 18   Document 57

above in paragraph 2) they are referred to as "practitioners" or "patent practitioners." Patent practitioners are subject to and governed by a code of professional conduct administered by the USPTO referred to as the PATENT AND TRADEMARK OFFICE CODE OF PROFESSIONAL RESPONSIBILITY 37 CFR §10.20 et seq. (hereafter "the CPR"). The CPR is a code of professional conduct applicable to patent practitioners that is in addition to the codes of professional conduct applicable to attorneys admitted to practice before the supreme courts of the various states of the United States. The CPR has a series of what are referred to as Canons and Disciplinary Rules. As is noted in the CPR, the "Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of practitioners...." 37 CFR §10.20(a). In contrast, "Disciplinary Rules are mandatory in character and state the minimum level of conduct below which no practitioner can fall without being subjected to disciplinary action." 37 CFR §10.20(b).

15. Practitioners are required by USPTO CPR governing patent practitioners to perform their fiduciary duties to their clients with care and competence. For example, Disciplinary Rule 37 C.F.R. § 10.77(c) states that "[a] practitioner [before the USPTO] shall not . . . handle a legal matter without preparation adequate in the circumstances" or "neglect a legal matter entrusted to the practitioner." In addition, Disciplinary Rule 10 C.F.R. § 10.23(c)(3) prohibits "misappropriation of, or failure to properly or timely remit, funds received by a practitioner or the practitioner's firm from a client to pay a fee which the client is required by law to pay to the [USPTO]." As will be discussed below, Mr. Sokol, violated all of these Rules. He acted incompetently (Canon 6 "A practitioner should represent a client competently."), unreasonably, and negligently to the detriment of Plaintiffs and their business and in violation of his practitioner's USPTO Code of Professional Responsibility.

7

### A Reasonable and Competent Patent Attorney Ensures That The Client is Kept Fully Informed About Maintenance Fees And That Maintenance Fees Are Paid on Time.

16. A reasonable and competent patent attorney who offers to his clients to docket their patents for payment of maintenance fees, and undertakes to docket the patent when the client accepts the offer, must ensure that the client is kept fully informed about the maintenance fees and is given the opportunity to pay each maintenance fee on time. Indeed, this is the primary purpose of docketing a patent: ensuring that the maintenance fees are paid on time unless the client instructs otherwise.

17. To meet the standard of care of a reasonable and competent patent attorney, an attorney would begin by notifying the client well in advance of each maintenance fee deadline that the deadline is approaching. The attorney would give the client an opportunity to direct him or her to pay the maintenance fee to keep the patent in force (or, alternatively, to make a conscious choice to let the patent expire). A patent attorney who fails to notify his client of maintenance fee deadlines well in advance of those deadlines has not met the applicable standard of care, because he has not done what a reasonable and competent patent attorney would do.

18. When the client instructs the patent attorney to pay a maintenance fee and makes arrangements to cover the expense of the payment (by advancing the costs or by some other means), a reasonable and competent patent attorney would, of course, pay the maintenance fee on time, as instructed. A patent attorney who fails to pay a maintenance fee after being instructed to do so by his client, particularly where the client has advanced the costs of paying the fee, obviously has not acted with the care of a reasonable and competent patent attorney. He has acted carelessly and contrary to the interests of the client in maintaining its patent assets.

8

## Defendant Jeffrey Sokol Did Not Act As a Reasonable and Competent Patent Attorney Would Have Acted in Letting the Patent Lapse Contrary to the Instructions of His Client.

19. In this case, defendant Andrus Sceales prosecuted the Patent on behalf of plaintiff UGTS, Inc. The Patent issued on March 25, 1997. In 1998, plaintiff GemEx Systems, Inc. acquired from UGTS an exclusive worldwide license to use the Patented technology. GemEx acquired UGTS in 2009, and since that time UGTS has been a wholly owned subsidiary of GemEx. UGTS and GemEx are collectively referred to hereafter as "Plaintiffs."

20. At the time the Patent issued (went into effect, in other words), Andrus Sceales represented UGTS through its attorney Eugene Sawall.

21. When the Patent issued, Andrus Sceales, through Mr. Sawall, advised GemEx by a letter dated March 17, 1997 that "[T]his patent will be subject to the requirement of maintenance fees payable during the third, seventh and eleventh years. We have docketed the patent accordingly."

22. By its March 17, 1997 letter, discussed above, in my opinion, Andrus Sceales undertook the obligation, responsibility, and duty to ensure that the maintenance fees were paid on time.

23. Mr. Sawall arranged for and paid the first maintenance fee on the Patent, which was due on March 25, 2001. Specifically, by a letter dated July 31, 2000, Mr. Sawall notified Plaintiffs that the first maintenance fee would soon be due. Mr. Sawall's letter asked GemEx whether GemEx wanted to pay the maintenance fee, and if so, to advance the amount of the maintenance fee itself and the cost of the legal services needed for payment of the fee. Plaintiffs instructed Mr. Sawall to pay the fee and advanced the funds as requested. Andrus Sceales then paid the first maintenance fee on the Patent on September 1, 2000, according to the USPTO's website.

9

Case 2:11-cv-00148-CNC   Filed 12/27/12   Page 9 of 18   Document 57

24.     Between payment of the first maintenance fee and the second maintenance fee coming due, Mr. Sawall retired. Defendant Jeffrey Sokol then became the Andrus Sceales partner responsible for representing Plaintiffs in connection with their intellectual property matters, including the Patent. Mr. Sokol is a registered patent attorney/patent practitioner since March 24, 1992 having a Patent and Trademark Office Registration number of 35686. He is also admitted to practice before the Supreme Court of the State of Wisconsin.

25.     The second maintenance fee on the Patent was due on March 25, 2005 (including the six-month grace period allowed by statute).

26.     On October 14, 2004, the USPTO sent Mr. Sokol a "maintenance fee reminder" notice letter for the Patent. The Notice stated that payment of the second maintenance fee would be accepted by the USPTO within what is called a six month "grace period" provided by United States law. The USPTO's letter warned that "THE PATENT WILL EXPIRE AS OF THE END OF THE GRACE PERIOD" if the maintenance fee was not paid. (Capitalization in original letter.)

27.     Multiple weeks later, Mr. Sokol stated to Plaintiffs by letter dated November 15, 2004 that the second maintenance fee on the Patent was "due on or before December 25, 2004." This statement was inaccurate having no basis in either statute or rule. Furthermore, Patent and Trademark Office business is never conducted on any date which is a holiday in the District of Columbia, Christmas day December 25, 2004 being such a holiday.

28.     Mr. Sokol's November 15, 2004 letter to Plaintiffs requested that Plaintiffs tell Mr. Sokol whether they wanted him to pay the second maintenance fee. If they did, the letter requested that Plaintiffs send Mr. Sokol payment of the cost of the fee and associated legal fees in the amount of $1,265.

10

29. On December 3, 2004, GemEx responded to Mr. Sokol's November 15, 2005 letter and instructed Mr. Sokol to pay the second maintenance fee. Plaintiffs enclosed with their instruction the $1,265 payment that Mr. Sokol had requested for payment of the fee.

30. Having received an instruction to pay the maintenance fee and the funds he had requested to do so, Mr. Sokol then failed to pay the maintenance fee by December 25, 2004 date set forth in the his November 15, 2004 letter.

31. Mr. Sokol then also failed to pay the maintenance fee by the due date of March 25, 2005. At that time, the Patent expired and lost its legal effect.

32. Had Mr. Sokol paid the maintenance fee by March 25, 2005, the Patent never would have expired.

33. It is my expert opinion that Mr. Sokol had duties based on his specific agreement to docket the patent, and based on his attorney-client relationship with Plaintiffs (including his fiduciary, contract, and other duties), to ensure that the maintenance fees were timely paid and that Plaintiffs were kept informed about the maintenance fees on the Patent. Mr. Sokol acted negligently in failing to pay the second maintenance fee by the March 25, 2005 due date. A reasonable and competent Patent attorney would not let his client's patent lapse unless the client had specifically instructed him to do so. A reasonable and competent patent attorney also would not fail to pay a maintenance fee having been expressly instructed by his client to do so, as Mr. Sokol did here. And a reasonable and competent patent attorney would not fail to pay the maintenance fee after having accepted money from his client for payment of the fee. In these respects, in my expert opinion, Mr. Sokol failed to meet the standard of care expected of a reasonable patent attorney.

<u>Defendant Jeffrey Sokol Failed to Act As a Reasonable Patent Attorney Would Have Acted In Failing to Forward Important Correspondence From the USPTO To His Clients.</u>

11

Case 2:11-cv-00148-CNC   Filed 12/27/12   Page 11 of 18   Document 57

34. On April 27, 2005, the USPTO sent Andrus Sceales a Notice of Expiration of the Patent. Andrus Sceales received the Notice on May 13, 2005. Mr. Sokol did not forward the Notice of Expiration to Plaintiffs. And he did not otherwise notify Plaintiffs that the Patent had expired.

35. Patent attorneys often receive important correspondence from the USPTO, which include, but are not limited to, communications related to patent maintenance fees like the one that was not paid in this case. During prosecution of a patent, for example, a patent attorney may receive office actions, and would respond to those office actions, as well as a notification when a patent issues. A reasonable and competent patent attorney would forward these pieces of important correspondence to his client.

36. The USPTO also sends patent attorneys a reminder when a maintenance fee is coming due. This correspondence is called a "maintenance fee reminder" notice. The USPTO will also send an attorney a "Notice of Expiration" of a patent when a maintenance fee is not paid by the due date and the patent has expired. As described above, a reasonable and competent patent attorney knows that a patent will expire prior to its full term if a patent maintenance fee goes unpaid by the due date.

37. A reasonable and competent patent attorney, when he receives such correspondence from the USPTO, forwards it to his client, and then communicates with the client about the substance of the correspondence. For example, a reasonable attorney who receives a maintenance fee reminder that a maintenance fee is coming due would forward such correspondence to his client and inform the client that the fee must be paid by the due date or else it will expire. Similarly, a reasonable attorney who receives a Notice of Expiration of a patent forwards the correspondence to his client and informs the client that the patent has

12

expired. An attorney who fails to do these things has failed to act with the care of a reasonable and competent patent attorney.

38. Indeed, Wisconsin's professional rules of conduct for attorneys, along with the USPTO's ethical standards, require an attorney to forward material correspondence to its client. For example, Rule 1.4 of the Wisconsin Rules of Professional Conduct for Attorneys states that a lawyer must "keep the client reasonably informed about the status of [the client's] matter." Rule 1.4 also requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" of the client. Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." Mr. Sokol failed to do any of these things in his representation of the Plaintiffs.

39. On April 27, 2005, the USPTO sent Mr. Sokol a Notice of Expiration of the Patent. Mr. Sokol failed to forward the Notice to Plaintiffs. In my opinion, by failing to forward the Notice of Expiration to Plaintiffs, Mr. Sokol failed to meet the standard of care expected of a reasonable patent attorney.

40. Despite the Patent's expiration in March 2005, the Patent still could have been reinstated relatively easily if Mr. Sokol had taken prompt action to correct his negligence and pay the overdue maintenance fee. Specifically, under United States law 35 USC §41(c), a patent that has been unintentionally abandoned may be reinstated within a period of two years of abandonment by simply completing a form stating that the abandonment was "unintentional," paying a fee, and filing both with the USPTO.

41. A reasonable and competent patent attorney who had received a Notice of Expiration would have discussed with the client how to reinstate the Patent. Indeed, even if the client had intended to allow the patent to expire (as sometimes happens, but was not the case
13

here), a reasonable and competent patent attorney still would have forwarded the Notice of Expiration to the client as part of the attorney's documentation that the patent had been intentionally abandoned. In my opinion, by failing to discuss how to reinstate the Patent with his clients, Mr. Sokol failed to meet the standard of care expected of a reasonable patent attorney.

<u>Defendants Jeffrey Sokol, Andrus Sceales, and Cook & Franke Did Not Act As a Reasonable Attorney Would Have Acted In Transferring the Patent File from Andrus Sceales to Cook & Franke.</u>

42. In November 2005, Mr. Sokol left Andrus Sceales and joined Cook & Franke as a shareholder. He sought and received Plaintiffs' permission to take their patent and intellectual property matters, including the Patent matter, with him to his new position at Cook & Franke.

43. On December 5, 2005, Plaintiffs sent a letter to Gary Essman at Andrus Sceales stating that they had decided "to transfer all of [their] matters to Jeffrey S. Sokol at his new law firm Cook & Franke S.C." The letter also instructed Andrus Sceales to "immediately make available all of [Plaintiffs'] files, together with information relating to [Plaintiffs'] client matters to Mr. Sokol[,]" for the matters to be transferred to Cook & Franke. It is clear that Cook & Franke also received this letter, because the letter was stamped by Cook & Franke as "[r]eceived" on "December 9, 2005." From my experience in transferring client matters from one law firm to another, it is very likely that the language for the December 5, 2005 letter was drafted by Mr. Sokol and forwarded to the client in draft to be printed on Plaintiff's letterhead.

44. On December 8, 2005, Andrus Sceales sent a confirmatory letter to Mr. Sokol stating that it would transfer Plaintiffs' files to Cook & Franke. The letter attached a checklist indicating the specific files that were being transferred and included the Patent file and the files that were not being transferred. The letter stated that only files with a check next to them were being "enclosed with this pick up." The Patent file was not checked. The letter did not explain

14

why some of Plaintiffs files were not being transferred even though Plaintiffs had specifically instructed that all files be transferred.

45. Despite receiving the checklist indicating that Andrus Sceales was not transferring the Patent file to Cook & Franke, it does not appear that Cook & Franke ever asked why the Patent file was not transferred to Mr. Sokol at his new job with Cook & Franke. Had it done so, Cook & Franke would have quickly discovered that its shareholder, Mr. Sokol, had mistakenly allowed the Patent to expire, and it would have had ample time to petition the USPTO to reinstate the Patent within the two-year window for reinstatement of an unintentionally abandoned patent. That window did not expire until March 25, 2007.

46. However, Plaintiffs did not learn of the Patent's expiration until November 2008, when their business attorney discovered the expiration (none of the defendants ever told Plaintiffs that the Patent had expired). Plaintiffs then hired new lawyers to try to reinstate the Patent. Because they were attempting to reinstate the Patent outside of the two-year window for reinstatement of an unintentionally abandoned patent, however, Plaintiffs were required to make a full evidentiary showing that the expiration of the Patent was "unavoidable"—a much higher standard than exists for reinstatement based on "unintentional" abandonment. It took Plaintiffs years, and cost Plaintiffs tens of thousands of dollars in professional fees, to prepare and file such a petition. On September 14, 2010—over five years after the Patent's expiration—the USPTO agreed to reinstate the Patent. However, a reinstated patent is subject to the intervening rights of competitors who made, purchased, offered to sell, or used anything protected by the patent during the period of lapse under 35 USC §41(c)(2).

47. When matters are transferred between law firms, a reasonable and competent patent attorney who transfers his business from one law firm to another would ensure that all

15

relevant patent files are included in the transfer. A law firm that practices patent law, and that has a lawyer leaving its practice, would take care to ensure that all relevant patent files and other documents are included in the transfer. A law firm that practices patent law, and that has a new lawyer join its practice who brings business to the law firm, would also take care to ensure that all relevant patent files and other documents (including, in particular, all files that the attorney's clients have instructed be transferred) are included in the transfer. A patent lawyer taking matters to a new law firm would take care to ensure that all relevant files are included in the transfer. Patent lawyers and law firms who fail to do these things have not met standard of care applicable to patent lawyers.

48. Andrus Sceales sent some of Plaintiffs' files to Cook & Franke, but failed to send all of the files—including the file for the '005 Patent. In my opinion, in failing to send all of the files as instructed by its clients, and in failing to investigate why one file—the file relating to the '005 Patent—was not included, Andrus Sceales failed to meet the standard of care expected of a reasonable patent attorney.

49. Cook & Franke failed to inquire why the Patent file was not transferred. A reasonable attorney supervising Cook & Franke's acceptance of all of Plaintiffs' business that Mr. Sokol had performed at Andrus Sceales, which Cook & Franke knew Plaintiffs had instructed to be transferred, would have inquired of Andrus Sceales why all of Mr. Sokol's files of Plaintiffs were not transferred to Mr. Sokol at Cook & Franke (and specifically why the Patent file had not been transferred). In my opinion, in failing to adequately and competently supervise the transfer of files, Cook & Franke failed to meet the standard of care expected of a reasonable attorney.

50. Similarly, Mr. Sokol failed to ask why the Patent file was not transferred from Andrus Sceales to Cook & Franke. Had he done so, Mr. Sokol would have discovered that he had negligently allowed the Patent to expire, and would have taken remedial action to reinstate the patent within the two year period for reinstatement by unintentional abandonment. In my opinion, by failing to inquire why the Patent file had not been transferred, Mr. Sokol failed to meet the standard of care expected of a reasonable patent attorney.

Cook & Franke Did Not Act As a Reasonable Attorney Would Have Acted In Conducting a Due Diligence Investigation of Its New Matters.

51. Cook & Franke had a duty, in taking on Mr. Sokol as a shareholder in its firm, to conduct due diligence regarding Mr. Sokol and his representation of the clients that he was bringing to Cook & Franke. Cook & Franke stood to profit from Mr. Sokol bringing his client base, including Plaintiffs, with him to his position as a shareholder at Cook & Franke. Cook & Franke failed to conduct that due diligence as a reasonable and competent attorney would. As a result, it failed to discover that its shareholder had negligently allowed the Patent to expire. In my opinion, by failing to conduct an adequate due diligence investigation that would have led to its taking steps to correct its shareholder's negligence on a client file, Cook & Franke failed to meet the standard of care expected of a reasonable attorney.

52. I have expressed the above opinions based on information reasonably available to me as of the date of this declaration. I am continuing to assess the actions of Andrus Sceales, Mr. Sokol, and Cook & Franke, and I reserve the right to supplement my opinions based on any subsequently learned facts that come to my attention.

**I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.**

Dated this 19th day of December, 2012.

_____
Grady J. Frenchick

dms.us.51286276.01