UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GEMEX SYSTEMS, INC. and<br>UGTS, Inc.,<br><br>    Plaintiffs,<br><br>v.<br><br>ANDRUS, SCEALES, STARKE & SAWALL,<br>LLP, COOK & FRANKE, S.C., JEFFREY S.<br>SOKOL, WESTCHESTER FIRE INSURANCE<br>COMPANY, and<br>ST. PAUL FIRE & MARINE INSURANCE<br>COMPANY,<br><br>    Defendants. | Case No.: 11-CV-00148 |

## PLAINTIFFS' STATEMENT OF PROPOSED MATERIAL FACTS TO WHICH PLAINTIFFS CONTEND THERE IS NO GENUINE ISSUE

Pursuant to Federal Rule of Civil Procedure 56(c)(1) and Civ. L.R. 56(b)(1)(C), Plaintiffs GemEx Systems, Inc. and UGTS, Inc. (collectively, "Plaintiffs") submit this "statement of proposed material facts as to which [GemEx] contends there is no genuine issue and that entitle Plaintiffs to judgment as a matter of law."  Civ. L.R. 56(b)(1)(C).

The following abbreviations are used in this Statement of Proposed Material Facts.

| Document | Abbreviation |
|---|---|
| Dkt. No. 1-1 | Compl. |
| Dkt. No. 42 | Andrus Answer |
| Dkt. No. 45 | Cook & Franke Answer |
| Declaration of Randall M. Wagner (submitted herewith) | Wagner Decl. |
| Exhibits to Declaration of Randall M. Wagner | Ex. |
| Declaration of Grady Frenchik (submitted herewith) | Frenchik Decl. |

1. GemEx, Inc. ("GemEx") and UGTS, Inc. are both Wisconsin Corporations. (Compl. ¶¶ 1, 2; Andrus Answer ¶ 1; Wagner Decl. ¶ 2.) Plaintiff UGTS, Inc. initially obtained the Patent in 1997. (Wagner Decl. ¶ 4.) Later that year, GemEx, Inc. (which was formed by the president and one employee of a UGTS affiliate—LamdaSpec) signed an exclusive worldwide license with UGTS for all of its patents, technology, and copyrights, including the Patent. (*Id.*) GemEx acquired UGTS in 2009, and UGTS is now a wholly owned subsidiary of GemEx. (*Id.*)

2. With the GemEx Light Performance Analysis® and Brillianscope®, GemEx provides a novel service to consumers: an objective measurement of the light characteristics of diamonds. (Wagner Decl. ¶¶ 5-7.)

3. The Brillianscope® embodies the technology in the U.S. Patent 5,615,005 (the "'005 Patent"). (Wagner Decl. ¶ 5.)

4. Andrus Sceales is a Wisconsin law firm that at all relevant times held itself out as having expertise in patent law. (Compl. ¶ 25; Andrus Answer ¶ 3; Wagner Decl. ¶ 8.) Andrus Sceales represented UGTS and GemEx in connection with its patent and intellectual property matters, including the matter of the '005 Patent. (Compl. ¶ 28; Andrus Answer ¶ 6; Cook & Franke ¶ 28; Sokol Answer ¶ 28.)

5. Mr. Sokol is an attorney and is admitted to practice at the USPTO. (Compl. ¶¶ 5, 27, Sokol Answer ¶¶ 5, 27), Mr. Sokol was a partner at Andrus Sceales until November, 2005, at which time he joined Cook & Franke. (Compl. ¶¶ 39; Andrus Answer ¶¶ 16; Cook & Franke Answer ¶¶ 39; Sokol Answer ¶¶ 27, 39.)

6. Cook & Franke was a Wisconsin Service Corporation until early 2012. (Compl. ¶ 4; Cook & Franke Answer ¶ 4.)

2

7. Eugene Sawall, an attorney at Andrus Sceales, prosecuted the '005 Patent at the USPTO for GemEx. (Compl. ¶ 28; Andrus Answer ¶ 6; Cook & Franke Answer ¶ 28; Sokol Answer ¶¶ 28, 29; Wagner Decl. ¶ 9.) Andrus Sceales represented Plaintiffs on a continuing basis with respect to the '005 Patent after it was granted. (Compl. ¶ 29; Andrus Answer ¶ 7.) Andrus Sceales and Mr. Sokol represented the Plaintiffs for many years leading up to the lapse of the '005 Patent, and represented them when the '005 Patent expired. (Compl. ¶¶ 27, 28, 29; Andrus Answer ¶¶ 5, 6, 7; Wagner Decl. ¶ 8.)

8. Under the United States Patent Laws, a patent holder must pay three separate patent maintenance fees to the USPTO in order to keep the patent in force. (Frenchik Decl. ¶ 11.)[1] These maintenance fees are due four years, eight years, and twelve years after the patent is granted. (*Id.*) The governing statute, 35 U.S.C. § 41(b) states that the maintenance fees are due at three years and six months, seven years and six months, and eleven years and six months after the issue date granting a patent. (*Id.*) However, the statute also provides that there is a six month grace period after each of those dates, during which, as a practical matter, a maintenance fee can be paid together with a small surcharge. (*Id.*) The requirement to pay those fees is found in 35 U.S.C. § 41(b) and 37 C.F.R. § 1.362(a). (*Id.*)

9. A reasonable and competent patent attorney would be well informed about the requirement to pay patent maintenance fee and how such maintenance fees are paid to the USPTO. (Frenchik Decl. ¶ 11.) If the patent owner seeks to maintain an enforceable patent, maintenance fees should be paid by the due dates, which occur at four years, eight

---

[1] The Declaration of Grady Frenchik is an expert opinion submitted by Plaintiffs in support of this Motion. Even though the Declaration includes Mr. Frenchik's opinions based on the facts, for the convenience of the Court, portions of the Declaration are included in this Statement of Facts pursuant to Civil Local Rule 56(b)(C).

3

years, and twelve years after a patent issues. (Frenchik Decl. ¶ 11.) A reasonable and competent patent would attorney would know that a patent will expire and lose its legal effect if a patent maintenance fee is not paid on time. (Frenchik Decl. ¶ 11.)

10. It is common for patent attorneys to provide a service to their clients to ensure that maintenance fees are timely paid. (Frenchik Decl. ¶ 12.) A patent attorney often will offer to record the dates that the maintenance fees are due, remind the patent holder near the due date that a maintenance fee will soon be due; obtain the necessary funds from the client to pay the maintenance fee, and pay the maintenance fee to the USPTO, as well as collateral services, like generally keeping the client informed when the fee has been paid. (*Id.*) Patent attorneys use different names for these services, including "docketing" the maintenance fees for payment, as well as "journaling," and "docket maintenance." (*Id.*)

11. The USPTO Code of Professional Responsibility ("USPTO CPR") is a code of professional conduct that applies to attorneys admitted to practice before the USPTO, in addition to the codes of professional conduct ascribed by the supreme courts of the states in which an attorney practices. (Frenchik Decl. ¶ 14.) The USPTO CPR contains both Canons, which are axiomatic norms, which express the standards of professional conduct in general terms, and Disciplinary Rules, which are mandatory in character and state the minimum level of conduct, below which a practitioner would be subject to disciplinary action. (Frenchik Decl. ¶ 14.)

12. Under the USPTO CPR, patent practitioners are required to perform their fiduciary duties to their clients with care and competence, not to neglect a legal matter entrusted to a patent practitioner, and not misappropriate or fail to properly and timely remit funds received from a client to pay a fee required by the rules. (Frenchik Decl. ¶ 15.)

13. A reasonable and competent patent attorney who offers to his clients to docket a patent for payment of maintenance fees and undertakes to docket the patent when the client accepts the offer must ensure that the client is kept informed about the maintenance fees and is given the opportunity to pay each maintenance fee on time. (Frenchik Decl. ¶ 16.)

14. As counsel to GemEx, upon the issuance of the '005 Patent, Andrus Sceales calculated the due dates for the maintenance fees, and wrote those due dates on its internal '005 Patent file. (Ex. C.)

15. At the time the '005 Patent issued, Attorney Sawall informed UGTS of the need for payment in a letter dated March 17, 1997. (Ex. B.) The letter stated:

> This patent will be subject to the requirement of maintenance fees payable during the third, seventh, and eleventh years. We have docketed the patent accordingly. We will check with you on or about March 25, 2000 to determine whether or not the maintenance fee is to be paid.

(Ex. B.) By the March 17, 1997 letter, Andrus Sceales undertook the responsibility and duty to ensure that the patent maintenance fees were paid on time. (Frenchik Decl. ¶ 22.)

16. The first (four-year) maintenance fee on the Patent was due on March 25, 2001, four years after the '005 Patent issued on March 25, 1997. (Frenchik Decl. ¶ 23; *see* Ex. A; Ex. C.)

17. Shortly before the first (four-year) maintenance fee became due, Andrus Sceales sent a letter to UGTS advising Randall Wagner at UGTS that the fee would soon be due and requested that UGTS advance the maintenance fee. (Ex. D; Wagner Decl. ¶ 13.)

18. UGTS paid the four-year maintenance fee to Andrus Sceales. (Ex. D; Wagner Decl. ¶ 14.) Andrus Sceales received UGTS's payment for the four year maintenance fee. (Ex. D; Wagner Decl. ¶ 14.) Andrus Sceales forwarded and paid the fee to the USPTO, as

5

Case 2:11-cv-00148-CNC   Filed 12/27/12   Page 5 of 12   Document 59

confirmed by a letter from Andrus Sceales to the USPTO transmitting the first maintenance fee, and a Maintenance Fee Statement from the USPTO to Andrus Sceales showing that the fee had been paid. (Ex. E; Ex. F.)

19. Shortly before the second (eight-year) maintenance fee became due, Eugene Sawall, the partner in charge of the Plaintiffs' matters at Andrus Sceales, retired from the practice of law. (Compl. ¶ 32; Andrus Answer ¶ 9.) Andrus Sceales remained counsel to GemEx and UGTS after Eugene Sawall retired, and Mr. Sokol took over the GemEx representation. (Compl. ¶¶ 27, 32; Andrus Answer ¶ 5, 9; Sokol Answer ¶ 27, 32; Wagner Decl. ¶ 16.)

20. On March 25, 2005, the second (eight-year) maintenance fee for the '005 Patent became due. (Frenchik Decl. ¶ 25; *see* Ex. A; Ex. C.)

21. On October 14, 2004, the USPTO sent Andrus Sceales, as counsel of record for the '005 Patent, a document called a "maintenance fee reminder" notice for the '005 Patent. (Exh. 6 to Petition; Compl. ¶ 34; Andrus Answer ¶ 11.) This maintenance fee reminder notice informed Andrus Sceales that the '005 Patent would lapse if the maintenance fee was not paid. (Ex. G at 2.) The maintenance fee reminder notice stated that the maintenance fee would be accepted if paid within a six month grace period, and also warned that "THIS PATENT WILL EXPIRE AS OF THE END OF THE GRACE PERIOD." (*Id.* (capitalization in original).)

22. One month after receiving the maintenance fee reminder notice, on November 15, 2004, Mr. Sokol at Andrus Sceales sent a letter to GemEx providing them inaccurate information regarding the date on which the second maintenance fee for the '005 Patent was due. (Ex. G; Wagner Decl. ¶ 18; Frenchik Decl. ¶ 27.) Mr. Sokol at Andrus Sceales

6

advised GemEx that "A second maintenance fee will be due on the above ['005] patent on or before December 25, 2004 to keep the patent alive."  (Ex. G; Wagner Decl. ¶ 18.)  In the opinion of Mr. Frenchik, this statement was inaccurate.  (Frenchik Decl. ¶ 27.)

23. The letter requested that Plaintiffs pay "[o]ur charges for attending to payment of this fee and including the fee itself will be $1,265.00 for a small entity, payable in advance." (Ex. G.)

24. Plaintiffs returned Mr. Sokol's letter on December 3, 2004, and in their response directed him to pay the second maintenance fee.  (Ex. H; Wagner Decl. ¶¶ 18-20.)  Plaintiffs enclosed a check for the requested $1,265.00 payable to Andrus Sceales.  (Ex. I; Wagner Decl. ¶ 20-21.)  The check stub that accompanied the check had written as a description "Patent 5615005 maintenance," which indicated that the check was for the maintenance fee for the '005 Patent.  (Ex. I; Wagner Decl. ¶ 21.)

25. Andrus Sceales and Mr. Sokol received the letter with the instructions and the check and cashed the check.  (Ex. H; Ex. I; Compl. ¶ 36; Andrus Answer ¶ 13; Wagner Decl. ¶ 34.)  Andrus Sceales and Mr. Sokol credited the firm's account for its legal work relating to the payment of the second maintenance fee.  (Ex. H; Ex. I; Ex. J; Ex. K; Compl. ¶ 36; Andrus Answer ¶ 13; Wagner Decl. ¶ 34.)

26. The second maintenance fee for the '005 Patent was not paid as of the due date of March 25, 2005.  (Ex. L; Compl. ¶ 37; Andrus Answer ¶ 14; Cook & Franke Answer ¶ 37; Sokol Answer ¶ 37.)

27. As a result of the failure to pay the second maintenance fee, the '005 Patent expired on March 25, 2005.  (Ex. L; Compl. ¶ 37; Andrus Answer ¶ 14; Cook & Franke Answer ¶

7

37; Frenchik Decl. ¶ 31.) Had Mr. Sokol and Andrus Sceales paid the maintenance fee by March 25, 2005, the Patent would not have so expired. (Frenchik Decl. ¶ 32.)

28. Andrus Sceales received the Notice of Expiration from the USPTO on May 13, 2005, as indicated by the stamp on the letter. (Ex. L.)

29. Mr. Sokol acted negligently by failing to pay the second maintenance fee by the March 25, 2005 due date. (Frenchik Decl. ¶ 33.) A reasonable and competent patent attorney would not let his client's patent lapse unless the client had specifically instructed him to do so. (Frenchik Decl. ¶ 33.) Further, a reasonable and competent patent attorney also would not fail to pay a maintenance fee, having been expressly instructed by his clients to do so. (Frenchik Decl. ¶ 33.) A reasonable and competent patent attorney would not fail to pay the maintenance fee having accepted money from his client for payment of the fee. (Frenchik Decl. ¶ 33.)

30. Mr. Sokol never forwarded the Notice of Patent Expiration to his clients, and never otherwise informed his clients of the expiration of the '005 Patent. (Wagner Decl. ¶ 30; Compl. ¶ 38; Andrus Answer ¶ 15; Cook & Franke Answer ¶ 38; Sokol Answer ¶ 38.)

31. Reasonable and competent patent attorneys must keep the client informed regarding these communications, and often forward significant communications from the USPTO directly to the client. (Frenchik Decl. ¶¶ 35-37.) Particularly when a communication from the USPTO is about the fact that a maintenance fee is coming due, a reasonable and competent patent attorney would ensure that he or she has forwarded the communications to, and discussed them with, the client. (Frenchik Decl. ¶¶ 35-37.) This is because a reasonable and competent patent attorney knows that if a maintenance fee is not paid on time, the patent expires. (Frenchik Decl. ¶¶ 36.) A reasonable and competent patent

attorney would have forwarded to his client the Notice of Patent Expiration and discussed with the client how to reinstate the Patent. (Frenchik Decl. ¶¶ 35-37.) Even had the client intended to allow the patent to expire, a reasonable and competent patent attorney would have forwarded the Notice of Expiration to the client as part of the attorney's documentation that the patent had been intentionally abandoned. (Frenchik Decl. ¶ 41.) By failing to forward the Notice of Expiration to his clients, Mr. Sokol and Andrus Sceales failed to exercise due care in their representation of Plaintiffs. (Frenchik ¶ 39.)

32. According to Mr. Frenchik, under the U.S. patent laws, an unintentionally abandoned patent can be very easily reinstated for two years following the Patent's lapse. (Frenchik Decl. ¶ 40 (citing 35 U.S.C. § 41(c).) Further, according to Mr. Frenchik, the patent holder simply must complete a form stating that the patent was unintentionally abandoned and pay the missed maintenance fee and, in addition, a moderate surcharge. (*Id.*) This window for petitioning to reinstate the patent as unintentionally abandoned remained open until March 25, 2007. (Frenchik Decl. ¶ 45.)

33. According to Mr. Frenchik, a reasonable and competent patent attorney who had received a notice of expiration would have discussed with the client how to reinstate the patent. (Frenchik Decl. ¶ 41.)

34. Neither Andrus Sceales nor Attorney Sokol nor Cook & Franke ever took any action to reinstate the Patent. (Wagner Decl. ¶ 30; Compl. ¶¶ 38, 45; Andrus Answer ¶¶ 15, 22; Cook & Franke Answer ¶¶ 38, 45; Sokol Answer ¶¶ 38, 45.)

35. In November 2005, Mr. Sokol resigned his position as a partner at Andrus Sceales and joined Cooke & Franke as a shareholder. (Compl. ¶ 39; Andrus Answer ¶ 16; Cook & Franke Answer ¶ 39; Sokol Answer ¶ 39.) When Mr. Sokol began working at Cook &

Franke in November 2005, the Patent had been expired for approximately eight months. (Exh. L.)

36. In a letter dated December 8, 2005, GemEx informed Andrus Sceales that "GemEx Systems Inc. has decided to transfer all of its matters to Jeffrey S. Sokol and his new law firm Cook & Franke S.C." (Exh. M.) GemEx requested that "[Andrus Sceales] immediately make available all of your files, together with all of the electronically stored files, documents, docketing information and any other information relating to our client matters to Mr. Sokol." (*Id.*) Cook & Franke received the letter, as indicated by the stamp marking the letter as having been "received" on "December 9, 2005." (*Id.*)

37. In order to effectuate the transfer of files, on December 8, 2005, Joseph Kuborn of Andrus Sceales sent a letter to Mr. Sokol at Cook & Franke enclosing a "listing of the files being transferred at this time." (Ex. N.) The letter indicates that only those files with a check are enclosed with the letter. (*Id.*) The '005 Patent matter (3016-0003) is on the list but not checked. (*Id.*) The '005 Patent file was never sent by Andrus Sceales to Cook & Franke. (Ex. N; Compl. ¶¶ 40, 41; Andrus Answer ¶¶ 17, 18; Cook & Franke Answer ¶ 40, 41; Sokol Answer ¶ 40, 41.) Cook & Franke never inquired why the '005 Patent file was not transferred along with the other GemEx and UGTS patent matters. (Compl. ¶ 45; Cook & Franke Answer ¶ 45.)

38. A reasonable and competent attorney supervising Cook & Franke's acceptance of all of the Plaintiffs' business that was being transferred to Cook & Franke would have inquired of Andrus Sceales why all of Mr. Sokol's files of Plaintiffs were not transferred to Mr. Sokol at Cook & Franke. (Frenchik Decl. ¶¶ 47-49.) In addition, by failing to inquire why the '005 Patent file was not transferred along with the other GemEx and UGTS

patent matters, Cook & Franke failed to meet the standard of care expected of a reasonable attorney. (Frenchik Decl. ¶¶ 49, 50.)

39. Cook & Franke had a duty to conduct a due diligence investigation on Mr. Sokol and on the representation of the clients that he was bringing to Cook & Franke. (Frenchik Decl. ¶ 51.) By failing to conduct an adequate due diligence investigation, Cook & Franke failed to meet the standard of care expected of a reasonable attorney. (Frenchik Decl. ¶ 51.)

40. GemEx did not learn of the expiration of the '005 Patent until November 2008 in connection with a review by their corporate attorney of their intellectual property portfolio. (Wagner Decl. ¶ 39.) GemEx immediately retained a new patent counsel to represent them in attempting to have the '005 Patent reinstated. (Wagner Decl. ¶¶ 46-48.)

41. Because Plaintiffs were attempting to reinstate the ''005 Patent outside of the two year reinstatement for an unintentionally abandoned patent, Plaintiffs were required to make a full evidentiary showing that the expiration of the Patent was "unavoidable." (Frenchik Decl. ¶ 46.)

42. The new patent counsel sought the assistance of Andrus Sceales, Mr. Sokol, and Cook & Franke in its efforts to prepare a petition for reinstatement, but each failed to cooperate with the new patent counsel in a timely manner. (Wagner Decl. ¶ 46.)

43. Plaintiffs spent over $55,000 to their new patent attorneys to petition the USPTO to reinstate the Patent. (Exh. R; Wagner Decl. ¶ 48.) Only after Plaintiffs' expenditure of resources was the '005 Patent reinstated on September 14, 2000. (Ex. T.)

Dated: December 27, 2012    FAEGRE BAKER DANIELS LLP

s/ Ari B. Lukoff
William L. Roberts (Minn. Bar No. 212763)
Michael F. Cockson (Minn. Bar No. 280549)
Ari B. Lukoff (Minn. Bar No. 0390025)
Adam M. Nodler (Minn. Bar No. 0390131)
2200 Wells Fargo Center, Suite 2200
Minneapolis, Minnesota 55402
tel: 612-766-7000
fax: 612-766-1600
william.roberts@faegrebd.com
michael.cockson@faegrebd.com
ari.lukoff@faegrebd.com
adam.nodler@faegrebd.com

KOHNER, MANN & KAILAS

Robert L. Gegios (Wis. Bar. No. 1002906)
William E. Fischer (Wis. Bar. No. 1045725)
4650 North Port Washington Road
Milwaukee, WI 53212-1059
tel: (414) 962-5110
fax: (414) 962-8725
rgegios@kmksc.com
wfischer@kmksc.com

**Attorneys for Plaintiffs Gemex Systems, Inc. and UGTS, Inc.**